DECISION AND JOURNAL ENTRY
{¶ 1} Defendant, Nolan Heflin, appeals from the judgment of the Summit County Court of Common Pleas which convicted him of robbery. We affirm.
 {¶ 2} On April 17, 2003, the Summit County Grand Jury indicted Defendant on one count of robbery, in violation of R.C. 2911.02(A)(2). Defendant pled not guilty and the matter proceeded to trial. The jury found Defendant guilty and he was sentenced to a four year term of imprisonment. It is from this decision that Defendant timely appeals asserting two assignments of error which have been consolidated for ease of review.
 ASSIGNMENT OF ERROR I
"The verdict of guilty of robbery was against the manifest weight of the evidence; and the State failed to prove all elements of the offense beyond a reasonable doubt thereby violating the Due Process Clause of theFourteenth Amendment of the United States Constitution."
 ASSIGNMENT OF ERROR II
"The verdict of guilty of robbery was against the manifest weight of the evidence; and the trial court erred by not granting [Defendant's] motions for acquittal, in that the verdict was not supported by substantial credible evidence."
 {¶ 3} In these assignments of error, Defendant challenges the adequacy of the evidence presented at trial. Specifically, Defendant avers that the State failed to present sufficient evidence to support the trial court's denial of his Crim.R. 29 motion for acquittal and that his conviction for robbery was against the manifest weight of the evidence presented at trial. Defendant's assignments of error lack merit.
 {¶ 4} As a preliminary matter, we note that sufficiency of the evidence produced by the State and the weight of the evidence adduced at trial are legally distinct issues. State v. Thompkins (1997),78 Ohio St.3d 380, 386. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at 3, citing Thompkins, 78 Ohio St.3d at 390 (Cook, J., concurring).
 {¶ 5} When a defendant asserts that his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 6} Defendant was found guilty of robbery, in violation of R.C.2911.02(A)(2), which prohibits the infliction of physical harm on another when committing a theft offense or in fleeing immediately after the commission of the offense. Defendant maintains that the State failed to prove the elements of robbery beyond a reasonable doubt. Specifically, Defendant argues that the State did not prove that he used force to inflict physical harm upon another when attempting to flee the scene of the theft. Defendant's assertions lack merit.
 {¶ 7} At trial, Morgan Black ("Black"), a security guard for Acme Co., offered her testimony regarding the incident. Black explained that on March 31, 2003, she was in the security office, monitoring the security cameras, at Acme Co. and had focused on Defendant. Defendant was observed concealing numerous packages of steak in his coat and leaving the store without paying for them. Black stated that she left the office, in pursuit of Defendant, when he had exited the first set of store doors. Black indicated that she was approximately two feet away from the doors when she caught up with him. Defendant's back was towards Black as he was walking away from the building into the parking lot.
 {¶ 8} Black testified that she then "intertwined [her] arms with his arms as [she] stated `[s]tore security.'" Black explained that she was hoping to position Defendant against the store wall in order to gain better control over him. Black's plan failed and Defendant broke free of her grasp and turned to face her. A brief struggle ensued. Black attempted to put her arms around Defendant's neck to control him but "in the process [Defendant] flipped [her] over his head onto the pavement." Black testified that Defendant did not actually lift her over his head, but was instead lifted through a "flip." As a result, Black momentarily lost consciousness and received a large bump on the crown of her head. Additionally, the steaks that were concealed inside Defendant's jacket fell to the ground. Black maintained that the confrontation lasted only seconds.
 {¶ 9} Three women, Brandi Dusenberry ("Dusenberry"), Tiffany Miller ("Miller"), and Jennifer Deem ("Deem"), witnessed the scuffle and testified as to what they had observed. The women were in the Acme parking lot, in Dusenberry's vehicle, on the night of March 31, 2003. Dusenberry recalled seeing a scuffle in the parking lot and "thought [that] it was two high school kids wrestling around[.]" She maintained that she was going to "holler at them to quit wrestling" but then realized it was more than just a minor scuffle. Dusenberry then saw Defendant "pick [Black] up and slam her down on the ground * * * like wrestling." Black landed head first onto the pavement. Moments later, she observed a second security guard exit the store. Dusenberry maintained that the actual confrontation between Defendant and Black lasted only seconds and was very fast. Dusenberry testified that she then called 9-1-1. While on the phone with the dispatcher, she heard a gunshot but did not know who had fired the gun.
 {¶ 10} Miller and Deem offered a similar version of the events. Miller stated that Defendant "flipped [Black] over on her head onto the cement." Deem indicated that Defendant "pulled [Black] over his shoulders and body slammed her * * * on the back of her head." Both women observed Black strike the ground with her head and asserted that Black was "flipped" and had not simply fallen.
 {¶ 11} Gerald Thompson ("Thompson") was also working security for Acme that same evening. He observed Black run out of the security office and follow Defendant out the door. Thompson indicated that this was the signal to follow Black. By the time Thompson had exited the building Black was already lying on the ground in a motionless state on her stomach; Thompson did not witness the altercation. He ran after the Defendant, who was then climbing into an SUV with two females. Thompson reached the vehicle and tried opening the doors, but they were locked. He then pulled out his firearm and ordered Defendant to exit the vehicle. Defendant opened the door and "took off running." Thompson recalled firing a warning shot overhead when "[Defendant] kept turning around at [him] like he might have a weapon[.]"
 {¶ 12} Defendant presented a different version of the evening's events. He explained that he had relapsed into drug use and began stealing a number of small items in order to support his drug habit. Defendant admitted in court that he stole steaks from Acme; he indicated that they were pressed beneath his arms under his jacket. However, Defendant maintained that he did not cause any physical harm to Black. He repeatedly stated that he walked out of the store "and then as soon as [he] got outside the store, somebody came and grabbed [him] from the back and [he] turned around. All the steaks fell on the ground. [He] ran and got in the car." Defendant asserted that there was no further confrontation with Black. He did not recall hearing Black say anything as she approached him; "[n]obody said it was security." Defendant explained that he thought he had gotten away with the steaks and was then being "mugged." Furthermore, he testified that he did not "flip" Black or pick her up, nor did he see her fall to the ground.
 {¶ 13} While Defendant was in the SUV, Thompson approached and told him to exit the vehicle. Defendant testified that he told the driver to leave but she would not comply. He then gathered his belongings, opened the door and said to Thompson, "`You going to shoot me for petty theft?' and took off running." Defendant asserted that Thompson shot at him when he began running. He indicated that he did not stop as he was merely told to exit the vehicle. Defendant contends that he did not interpret that statement as placing him under arrest.
 {¶ 14} Clearly, the jury, in weighing the evidence, the credibility of the witnesses, and the testimony elicited at trial, could have concluded that Defendant was guilty. Moreover, a determination as to what occurred is a question for the trier of fact, and it is not the function of the appellate court to substitute its judgment for that of the factfinder. See State v. Jenks (1991), 61 Ohio St.3d 259, 273. After careful review of the record, we are unable to conclude that the trier of fact lost its way and created a manifest miscarriage of justice when convicting Defendant of robbery. Consequently, Defendant's conviction was not against the manifest weight of the evidence.
 {¶ 15} This Court has previously observed that "[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." (Emphasis omitted.) State v. Roberts
(Sept. 17, 1997), 9th Dist. No. 96CA006462, at 4. As we have already determined that Defendant's conviction was not against the manifest weight of the evidence, we necessarily conclude that there was sufficient evidence to support the verdict in this case. Accordingly, Defendant's assignments of error are overruled.
 {¶ 16} Defendant's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
Baird, J. and Batchelder, J., concur.