OPINION
{¶ 1} Defendant-appellant Maurice Oliver, a juvenile, appeals the judgment of the Licking County Court of Common Pleas, Juvenile Division, adjudicating him a delinquent child by reason of having committed the offense of robbery.
 {¶ 2} On December 20, 2004, appellant, age 17, was charged with Robbery, in violation of R.C. 2911.02 (A) (2), in the Licking County Juvenile Court.
 {¶ 3} On March 15, 2005, a trial was held in front of the Magistrate Sassen. The following evidence was adduced during the trial.
 {¶ 4} Tacy Goings was one of three employees working at a United Dairy Farmer's convenience store on December 18, 2004. Ms. Goings testified that she observed the appellant remove a gray and green package of cigars from the second shelf in the candy and tobacco aisle and place them in his jacket pocket. (T. at 54-55). Tyler Wilson a second employee testified that he observed the appellant grab a five-pack of cigars and place them in his right back pocket. (T. at 59-62; 67; 71). Appellant then proceeded to the counter, purchased a bag of chips and proceeded to walk out the door. Ms. Goings followed appellant out the door and asked him to come back inside the store. Appellant voluntarily re-entered the store with Ms. Goings. Ms. Goings then instructed a second clerk to call the police. At that point appellant exited the store and a scuffle ensued with Ms. Goings.
 {¶ 5} Ms. Goings testified that she was going to lock the door and appellant pushed her. The two ended up outside the store; appellant was swinging at her and Ms. Goings fell to the ground. Ms. Goings further testified that she had red marks on her neck as a result of this incident. Patrolman Earl Rowe of the Newark Police Department testified that he observed and photographed red marks on Ms. Goings' neck. A video surveillance tape was secured by the police and admitted into evidence.
 {¶ 6} Officer Rowe testified that he was able to speak with the appellant later in the evening. He collected the jacket that appellant was wearing which matched the description the clerk gave as the person who had stolen the cigars from the store. The appellant admitted to Officer Rowe that he was at the United Dairy Farmer's convenience store that evening and he "squeezed between her [the clerk] and the door." (T. at 15).
 {¶ 7} Officer Jon Purtee testified that he went to the appellant's home. The appellant and his mother told the officer that appellant had been home all night and had not left the house. Appellant's mother also stated: "she had not taken her eyes off of him." (T. at 76).
 {¶ 8} Appellant called two witnesses. The first witness, Brandon Miles, a friend of the appellant was not present at the time of the incident inside the store. Mr. Miles met the defendant later in the evening. Mr. Miles testified that the appellant did not tell him anything about what had occurred at the store. Mr. Miles further testified that he didn't know the appellant to smoke.
 {¶ 9} The appellant testified that he was present at the store on the date and time in question and that he went into the candy aisle, which is also the tobacco aisle, at that store. Appellant further testified that he doesn't smoke cigars but has smoked cigarettes. Appellant testified that he "did not like the police — and I did not want to stay there." Appellant claimed he did not like the police because they beat his mother up. Appellant also testified that police have never done anything to him personally.
 {¶ 10} Appellant testified that he knew the store clerk wanted to stop him when she put her hand on the door in front of him but "he did not want to stay in the store." (T. at 102). Appellant testified he tried to duck under the clerk's hand but that the clerk grabbed him and he started spinning to get out. However, appellant claims other people grabbed him as well. (T. at 95). As people were pulling at him, he tried to yank his arm away. (Id.). Appellant stated that he was getting more scared because it felt like a bunch of people he did not know were grabbing him.
 {¶ 11} The State admitted into evidence photographs of Ms. Goings, evidence collected at the scene and from appellant, and a video surveillance tape. No cigars were recovered by the police.
 {¶ 12} At the conclusion of the trial, the magistrate found that "it was obvious from the testimony of everyone, including yourself, and the video tape, that you used force in fleeing from the scene." The court found that the testimony from the three store clerks was credible as to what they observed and stated there was no reason not to believe their testimony. The magistrate did not find the appellant to be credible stating "your own testimony regarding your reason for fleeing the scene is absolutely, completely, and totally unbelievable."
 {¶ 13} At the close of the trial, Magistrate Sasson adjudicated appellant delinquent of Robbery, a felony of the second degree. After a short recess the court proceeded to disposition at which time the magistrate committed appellant to the Department of Youth Services for a minimum period of one year to a maximum period of his twenty-first birthday.
 {¶ 14} Appellant now appeals, assigning the following as error:
 {¶ 15} "I. THE TRIAL COURT VIOLATED MAURICE OLIVER'S RIGHT TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE I, SECTION 16, OF THE OHIO CONSTITUTION, AND JUVENILE RULE 29 (E)(4) WHEN IT ADJUDICATED HIM DELINQUENT OF ROBBERY ABSENT PROOF OF EVERY ELEMENT OF THE CHARGE AGAINST HIM BY SUFFICIENT, COMPETENT, AND CREDIBLE EVIDENCE."
 {¶ 16} "II. THE TRIAL COURT VIOLATED MAURICE OLIVER'S RIGHT TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION WHEN IT ADJUDICATED HIM DELINQUENT OF FELONIOUS ASSAULT [SIC.] WHEN THAT FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 17} "III. MAURICE OLIVER WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH ANDFOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION."
 I. II. {¶ 18} At the outset we note that appellant did not object to the decision of the magistrate nor did he request Findings of Fact and Conclusions of Law from the trial court. Further, appellant failed to file the transcript of the proceedings with the trial court prior to the trial judge accepting the magistrate's recommendation.
 {¶ 19} Juv.R. 40(E) (3) (b) provides: "* * * A party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule."
 {¶ 20} In appellant's Third Assignment of Error, infra, appellant argues that, had trial counsel requested findings of fact as provided for in Juv.R. 40(E) (2) and objected to the magistrate's decision as provided for in Juv.R. 40(E) (3), he would have been able to assign error on appeal based on the insufficiency and the weight of the evidence.
 {¶ 21} In In re Comer (Sept. 23, 1997), 10th Dist. No. 96 APF11-1571, the court faced a similar situation and therein noted: "[a]ppellant's effort to show that the trial judge would have found in his favor but for the errors would be thwarted by the fact that appellant failed to make the transcript of the proceedings before the magistrate part of the record in the trial court . . . This court generally will not consider evidence not part of the record before the trial court. We do so in this case for two reasons.
 {¶ 22} "First, we presume that the failure to file a transcript for review by the trial judge is associated with the failure to request findings of fact and the failure to object to the magistrate's report.
 {¶ 23} "Second, because of the nature of the alleged errors, it would be impossible to apply the second prong of theStrickland test without considering the evidence presented to the magistrate. A somewhat similar situation was presented in Inre Raymond R. (Oct. 25, 1996), Erie App. No. E-96-022, unreported. In Raymond R., the juvenile court adopted the magistrate's recommendation that the appellant be adjudicated a delinquent child for committing what would have been the crime of rape if committed by an adult. On appeal, the appellant alleged error based on the weight of the evidence and ineffective assistance of counsel for counsel's failure to timely file objections to the magistrate's decision. After deciding that the judgment was not contrary to the manifest weight of the evidence, the court of appeals noted that failure to file the objections timely did not work to the appellant's prejudice because the only argument raised in the objections was the weight of the evidence, which the court of appeals was rejecting. Just as the court inRaymond R. looked beyond the record to the untimely objections for the purpose of determining whether appellant was prejudiced by counsel's failures, we have examined the evidence presented to the magistrate, the trial transcript and exhibits, despite the fact that they were not available to the trial judge".
 {¶ 24} In the interest of justice, this court will examine the evidence presented to the magistrate, the trial transcript and exhibits, despite the fact that they were not available to the trial judge.
 {¶ 25} In his First Assignment of Error appellant maintains that there was insufficient evidence to support his conviction for robbery. In his Second Assignment of Error, appellant maintains that his conviction is against the manifest weight of the evidence. We disagree.
 {¶ 26} Our standard of reviewing a claim a verdict was not supported by sufficient evidence is to examine the evidence presented at trial to determine whether the evidence, if believed, would convince the average mind of the accused's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt,State v. Jenks (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492,503.
 {¶ 27} The Supreme Court has explained the distinction between claims of sufficiency of the evidence and manifest weight. Sufficiency of the evidence is a question for the trial court to determine whether the State has met its burden to produce evidence on each element of the crime charged, sufficient for the matter to be submitted to the jury.
 {¶ 28} Manifest weight of the evidence claims concern the amount of evidence offered in support of one side of the case, and is a jury question. We must determine whether the jury, in interpreting the facts, so lost its way that its verdict results in a manifest miscarriage of justice, State v. Thompkins
(1997), 78 Ohio St.3d 387, citations deleted. On review for manifest weight, a reviewing court is "to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment."State v. Thompkins, 78 Ohio St.3d 380, 387, 678 N.E.2d 541,1997-Ohio-52, citing State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v.DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, syllabus 1.
 {¶ 29} Appellant challenges his conviction on one count of Robbery. R.C. 2911.02(A) (2) provides: "(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following: (2) Inflict, attempt to inflict, or threaten to inflict physical harm on another. . . ."
 {¶ 30} Appellant argues that the State failed to prove: 1). a theft or attempted theft offense; 2). that appellant inflicted, attempted to inflict, or threatened to inflict physical harm; and 3).that the attempted, threatened or actual infliction of "physical harm" occurred during the attempt, the offense, or in fleeing immediately after the attempt or offense.
 {¶ 31} In the case at bar, Tacy Goings testified that she observed the appellant remove a gray and green package of cigars from the second self and place them in his jacket pocket. (T. at 54-55). Tyler Wilson testified that he observed appellant grab a five-pack of cigars and place them in his right back pocket. (Id. at 59-62; 67; 71).
 {¶ 32} Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed a theft offense.
 {¶ 33} We hold, therefore, that the state met its burden of production regarding attempting or committing a theft offense as required by R.C. 2911.02(A) (2) and, accordingly, there was sufficient evidence to support appellant's conviction.
 {¶ 34} Although appellant presented his witness and his own testimony in an attempt to establish that he did not steal the merchandise, and further argued that the merchandise was never recovered, the trier of fact was free to accept or reject any and all of the evidence offered by the appellant and assess the witness's credibility. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. State v. Jenks (1991),61 Ohio St. 3d 259, 574 N.E. 2d 492.
 {¶ 35} We conclude the trier of fact, in resolving the conflicts in the evidence, did not create a manifest miscarriage of justice so as to require a new trial. Viewing this evidence in a light most favorable to the prosecution, we further conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant attempted or committed a theft offense.
 {¶ 36} The question next becomes whether the appellant inflicted, attempted to inflict, or threatened to inflict physical harm.
 {¶ 37} Tacy Goings testified in the case at bar "I was going to lock the door, and he shoved and pushed and everything and we — somehow we ended up outside, and we ended up outside, he was swinging at me, and then I fell to the ground and he took off behind the building." (T. at 42). Ms. Goings further testified that she had red marks on her neck. (Id.). Patrolmen Earl Roe of the Newark Police Department testified that he observed and photographed the red marks on Ms. Goings neck. (Id. at 10-11). (State's Exhibit 3). The video surveillance tape corroborates that appellant forcibly struggled with Ms. Goings while attempting to exit the store. (State's Exhibit 5).
 {¶ 38} R.C. 2901.01 states, in relevant part: "(A) As used in the Revised Code:
 {¶ 39} "(3) `Physical harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration".
 {¶ 40} The Legislative Service Commission comments further states: "`Physical harm to persons' is conceived as personal, physical harm including, but not limited to, personal injury. In the context of tort law personal injury implies a trauma, but in the context of the criminal law a precedent trauma is not viewed as a necessary requirement before it can be held that personal harm is caused or threatened, such as when an offender deliberately, through other than traumatic means, sets out to drive his victim mad or arranges for his victim to contract pneumonia".
 {¶ 41} This court has previously held that "no showing of actual trauma or injury is needed to satisfy the `physical harm' element of assault. The qualification of the physical contact as `physical harm" is a matter to be determined by the trier of fact". State v. Robinson (Sept. 30, 1985), 5th Dist. No. CA-6649; State v. Dansby (June 15, 1988), 5th Dist. No. 87AP090068. See, also State v. Perkins (March 27, 1998), 11th District No. 96-P-0221("When there is no tangible, physical injury such as a bruise or cut, it becomes the province of the jury to determine whether, under the circumstances, the victim was physically injured, after reviewing all of the evidence surrounding the event"); State v. Bowers, 11th Dist. No. 2002-A-0010, 2002-Ohio-6913 at ¶ 15 ("In the instant case, the victim attested that appellant tackled him without his permission causing him to fall to the ground. The victim stated that he was not injured or bruised as a result of the incident; however, he attested that he experienced pain in his stomach and side when he was tackled. Reviewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found that appellant inflicted physical harm on Boggs, as provided in R.C.2901.22, and knowingly caused Boggs physical harm, as provided in R.C. 2901.01(A)(3)") .
 {¶ 42} Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had caused physical harm to another.
 {¶ 43} We hold, therefore, that the state met its burden of production regarding inflict, attempt to inflict, or threaten to inflict physical harm on another as required by R.C. 2911.02(A) (2) and, accordingly, there was sufficient evidence to support appellant's conviction.
 {¶ 44} Although appellant presented his witness and his own testimony in an attempt to establish that he did not inflict, attempt to inflict, or threaten to inflict physical harm the trier of fact was free to accept or reject any and all of the evidence offered by the appellant and assess the witness's credibility. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. State v. Jenks (1991), 61 Ohio St. 3d 259,574 N.E. 2d 492.
 {¶ 45} We conclude the trier of fact, in resolving the conflicts in the evidence, did not create a manifest miscarriage of justice so as to require a new trial. Viewing this evidence in a light most favorable to the prosecution, we further conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant inflicted, attempted to inflict, or threaten to inflict physical harm as provided in R.C.2911.02(A)(2), and caused Ms. Goings physical harm, as provided in R.C. 2901.01(A)(3).
 {¶ 46} The final contention raised by appellant in the case at bar is whether the attempted, threatened or actual infliction of "physical harm" occurred during the attempt, the offense, or in fleeing immediately after the attempt or offense.
 {¶ 47} In State v. Thomas the appellant was observed leaving a grocery store with two bags of merchandise that he had not paid for. "Soon after leaving the store, Thomas dropped the bags and continued walking away from the store. Matthew Craska, a uniformed off-duty police officer working security at the grocery store, followed Thomas into a nearby laundromat. Craska told Thomas to step outside, which he did. The two of them started back toward the store. When they got to the front door, Thomas attempted to run away and, in the ensuing struggle, struck Craska in the face with his head". 106 Ohio St.3d 133, 2005-Ohio-4104 at ¶ 2, 832 N.E.2d 1190, 1191. The Court in Thomas noted "[o]ur task is to determine whether the evidence was sufficient to show that Thomas inflicted harm while `attempting or committing a theft offense or in fleeing immediately after the attempt or offense.'" Id. at 134, 2005-Ohio-4104 at ¶ 14,832 N.E.2d at 1192. The Court concluded: "[i]t is readily apparent to us that the evidence was insufficient to show that Thomas was `fleeing immediately after' a theft when he inflicted harm on Craska. When Thomas and Craska neared the store, having walked together from the laundromat, Thomas was not `fleeing immediately' after a theft. There was a delay or lapse of time between the theft offense and the attempt to flee, so that Thomas's actions upon his return with Craska to the store's front door were not `immediately after' the theft offense within the meaning of R.C. 2911.02(A)". Id. at 135, 2005-Ohio-4104 at ¶ 16,832 N.E.2d at 1192. However, the court noted that each case must be decided upon the facts presented: "[o]ur conclusion in this case is fact-specific, as all determinations under this statute must be. Had Thomas struggled with Craska in an attempt to flee immediately after Thomas left the store, or after he dropped the stolen goods, or after being forced by Craska to return to the store, then an ensuing injury, attempt to injure, or threat to injure might justify elevation of the offense from theft to robbery". Id.
 {¶ 48} In the case at bar, the video surveillance tape establishes that less than thirty (30) seconds elapse between the time appellant exits the store, re-enters the store at the clerk's request and then flees the store upon being informed that the clerk is going to call the police. (State's Exhibit 5).
 {¶ 49} We conclude that in the present case, it was reasonable for the trier of fact to conclude that appellant initially cooperated under the belief he would be free to go after first consulting with store clerk. Upon learning that the police would be called and charges would result, appellant then used force to flee. Since no intervening act or event was deemed to have occurred between the theft or attempted theft, the trial court, acting as the trier of fact, was justified in determining whether the force used was immediate. State v. Tate, 8th Dist. No. 82871, 2004-Ohio-2007 at ¶ 29. (Gallagher, J., concurring).
 {¶ 50} In the case at bar, there is no evidence that appellant abandoned the merchandise before re-entering the store. The struggle ensued as the clerk attempted to detain appellant for the commission of a theft offense. We find no intervening events so that appellant's actions upon his return inside with Ms. Goings were "immediately after" the theft offense within the meaning of R.C. 2911.02(A). We find consistent with State v.Thomas, supra, that appellant struggled with Ms. Goings immediately after being asked by her to return to the store.106 Ohio St.3d 135, 2005-Ohio-4104 at ¶ 16, 832 N.E.2d 1192.
 {¶ 51} Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had caused physical harm to another while "attempting or committing a theft offense or in fleeing immediately after the attempt or offense."
 {¶ 52} We hold, therefore, that the state met its burden of production regarding inflict, attempt to inflict, or threaten to inflict physical harm on another while "attempting or committing a theft offense or in fleeing immediately after the attempt or offense" as required by R.C. 2911.02(A) (2) and, accordingly, there was sufficient evidence to support appellant's conviction.
 {¶ 53} Although appellant presented his witness and his own testimony in an attempt to establish that he did not inflict, attempt to inflict, or threaten to inflict physical harm while attempting or committing a theft offense or in fleeing immediately after the attempt or offense the trier of fact was free to accept or reject any and all of the evidence offered by the appellant and assess the witness's credibility. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. State v. Jenks (1991), 61 Ohio St. 3d 259,574 N.E. 2d 492.
 {¶ 54} We conclude the trier of fact, in resolving the conflicts in the evidence, did not create a manifest miscarriage of justice so as to require a new trial. Viewing this evidence in a light most favorable to the prosecution, we further conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant inflicted, attempted to inflict, or threaten to inflict physical harm while attempting or committing a theft offense or in fleeing immediately after the attempt or offense as provided in R.C. 2911.02(A) (2).
 {¶ 55} Accordingly, appellant's conviction for robbery was not against the manifest weight of the evidence.
 {¶ 56} Appellant's First and Second Assignments of Error are overruled.
 III. {¶ 57} In his Third Assignment of Error appellant claims he was denied effective assistance of trial counsel. We disagree.
 {¶ 58} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry in whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Lockhart v. Fretwell (1993), 506 U.S. 364,113 S.Ct. 838, 122 L.Ed.2d 180; Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley
(1989), 42 Ohio St.3d 136. {¶ 59} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley, 42 Ohio St. 3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 60} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Bradley, supra at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
 {¶ 61} The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley at 143, quoting Strickland at 697. Accordingly, we will direct our attention to the second prong of the Strickland test.
 {¶ 62} The first area in which appellant alleges that his trial counsel was ineffective was in counsel's failure to move for a Crim. R. 29 motion for acquittal at the conclusion of the State's case and at the conclusion of his case.
 {¶ 63} "The purpose of a motion for judgment of acquittal is to test the sufficiency of the evidence and, where the evidence is insufficient, to take the case from the jury. In the non-jury trial, however, the defendant's plea of not guilty serves as a motion for judgment of acquittal, and obviates the necessity of renewing a Crim.R. 29 motion at the close of all the evidence. See the following cases decided under the analogous Fed.R.Crim.P.29: Hall v. United States (C.A. 5, 1961), 286 F.2d 676, 677, certiorari denied, 366 U.S. 910, 81 S.Ct. 1087, 6 L.Ed.2d 236;United States v. Besase (C.A. 6, 1967), 373 F.2d 120, 121;United States v. Pitts (C.A. 5, 1970), 428 F.2d 534, 535, certiorari denied, 400 U.S. 910, 91 S.Ct. 154, 27 L.Ed.2d 149. See also, 8A Moore's Federal Practice, Paragraphs 29.01 Et seq."Dayton v. Rogers (1979), 60 Ohio St.2d 162, 163,398 N.E.2d 781, overruled on other grounds, State v. Lassaro (1996),76 Ohio St.3d 261, 266, 667 N.E.2d 384. Crim. R. 29 has no application in a case tried to the court. Id.
 {¶ 64} As appellant's case was tried before a magistrate, the failure of appellant's trial counsel to make a Crim. R. 29 motion for judgment of acquittal is harmless error. Appellant has failed to demonstrate that there exists a reasonable probability that, had trial counsel made such a motion, the result of his trial would have been different.
 {¶ 65} Appellant final contention is that trial counsel was ineffective in failing to object to the Magistrate's decision and failing to request Findings of Fact and Conclusions of Law from the trial court.
 {¶ 66} In light of our disposition of appellant's First and Second Assignments of Error, supra, Appellant has failed to demonstrate that there exists a reasonable probability that, had trial counsel made such a request, the result of his trial would have been different.
 {¶ 67} Appellant's Third Assignment of Error is overruled.
 {¶ 68} For the foregoing reasons, the judgment of the Licking County Court of Common Pleas, Juvenile Division, Ohio, is affirmed.
Gwin, J., Boggins, P.J., and Hoffman, J., concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Licking County Court of Common Pleas, Juvenile Division, Ohio, is affirmed. Costs to appellant.