OPINION
{¶ 1} Defendant-appellant, Thomas Whitaker, appeals his conviction in the Butler County Court of Common Pleas for robbery. We affirm the decision of the trial court.
 {¶ 2} On October 18, 2007, Maurice White and Thomas Whitaker took a taxi to a Meijer store located in Butler County. A short time later, the pair was observed leaving the store with two bags of clothing for which they had not paid. Soon after leaving the store, the men were confronted by John O'Connor, a Meijer store security guard, and asked to return to *Page 2 
the store. In response, White dropped the two bags and ran towards a nearby gas station, while Whitaker, after a brief struggle, was handcuffed and returned to the store security office. Neither man paid the fare for the taxi. Whitaker was then arrested and charged with petty theft in violation of R.C. 2913.02(A)(1), a first-degree misdemeanor, and robbery in violation of R.C. 2911.02(A)(2), a second-degree felony.
 {¶ 3} Following a jury trial, Whitaker was found guilty on both offenses and sentenced to three years in prison. Whitaker now appeals his conviction for robbery, raising one assignment of error.
 {¶ 4} "THE JURY FINDINGS OF GUILTY OF ROBBERY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE." [sic]
 {¶ 5} In his sole assignment of error, Whitaker contends that his conviction for robbery was against the manifest weight of the evidence. However, upon examination of Whitaker's arguments, we note that he also argues that the state did not prove the essential elements of robbery as defined by R.C. 2911.02(A)(2), and as a result, failed to provide sufficient evidence to support his conviction. Therefore, Whitaker is essentially challenging the adequacy of the evidence presented at trial, and is also claiming that his robbery conviction was against the manifest weight of the evidence. Both of these arguments lack merit.
 {¶ 6} Whether the evidence presented is legally sufficient to sustain a verdict is a question of law. State v.Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52. An appellate court, in reviewing the sufficiency of the evidence supporting a criminal conviction, examines the evidence in order to determine whether such evidence, if believed, would support a conviction.State v. Carroll, Clermont App. Nos. CA2007-02-030, CA2007-03-041, 2007-Ohio-7075, ¶ 117. After examining the evidence in a light most favorable to the prosecution, the appellate court must then determine if "any rational trier of fact could have found the *Page 3 
essential elements of the crime proven beyond a reasonable doubt." Id. Proof beyond a reasonable doubt is "proof of such character that an ordinary person would be willing to rely and act upon it in the most important of his own affairs." R.C. 2901.05(D).
 {¶ 7} Unlike a sufficiency of the evidence challenge, a manifest weight challenge concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other. Carroll at ¶ 118. An appellate court considering whether a conviction was against the manifest weight of the evidence must review the entire record, weighing the evidence and all reasonable inferences, and consider the credibility of witnesses. State v. Good, Butler App. No. CA2007-03-082, 2008-Ohio-4502, ¶ 25, citing State v. Hancock,108 Ohio St.3d 57, 2006-Ohio-160, ¶ 39. Under a manifest weight challenge, the question is whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed.Good at ¶ 25. This discretionary power would be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. State v. Heflin, Summit App. No. 21655, 2003-Ohio-7181, ¶ 5.
 {¶ 8} "Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency."State v. Smith, Fayette App. No. CA2006-08-030, 2009-Ohio-197, ¶ 73. As a result, a determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency. Id.
 {¶ 9} Whitaker was charged with robbery in violation of R.C. 2911.02(A)(2), which prohibits any person while "attempting or committing a theft offense or in fleeing immediately after the attempt or offense * * * [from] inflict[ing], attempting] to inflict, or threatening] to inflict physical harm on another * * *."
 {¶ 10} "Physical harm," as defined by R.C. 2901.01(A)(3), "means any injury, illness, *Page 4 
or other physiological impairment, regardless of its gravity or duration." The qualification of physical contact as "physical harm" is a matter to be determined by the trier of fact. In reOliver, Licking App. No. 2005-CA-40, 2005-Ohio-5792, ¶ 41. Moreover, "[w]here a defendant struggles with a security guard while resisting apprehension after a shoplifting incident * * * such conduct, as part of a single continuous act committed by the defendant, constitutes sufficient evidence to establish the force or harm element of robbery in this context." State v. Hughes, Cuyahoga App. No. 81768, 2003-Ohio-2307, ¶ 23.
 {¶ 11} Neither "fleeing" nor "immediately" is defined in the Ohio Revised Code. State v. Thomas, 106 Ohio St.3d 133,2005-Ohio-4106, ¶ 15. The Ohio Supreme Court, in an effort to define "fleeing immediately" as found within R.C. 2911.02(A), defined "flee" as "to run away from, to try to escape, to hasten for safety, or to withdraw hastily," and "immediate" as "occurring without delay." (Internal quotations omitted.) Id. A determination of whether a person is "fleeing immediately" is "fact specific, as all determinations under this statute must be." Id. at ¶ 16.
 {¶ 12} Whitaker argues that the state failed to prove the essential elements of robbery beyond a reasonable doubt. Specifically, Whitaker argues that the "record is void of any evidence of actual physical harm," and that "no rational jury could have found beyond a reasonable doubt that [he] fled immediately after attempting to steal merchandise from Meijer's." We disagree with that argument.
 {¶ 13} At trial, John O'Connor, a Meijer store security guard, testified that he observed White and Whitaker enter the store through the garden center, walk to the men's clothing department, place merchandise into two plastic bags, and then exit the store without paying for the items. O'Connor explained that after he saw White and Whitaker exit the store without paying, he followed them to the parking lot, identified himself as the store security guard, and asked the pair to return to the store. In response, O'Connor testified that White *Page 5 
threw the bags containing the stolen merchandise on the ground, "placed his hand to the front of his pants," and told him that he "didn't want any of this" before he "took off running." O'Connor also testified, even though he believed White had a gun, that he "loosely followed" him through the parking lot before calling the police.
 {¶ 14} In addition, O'Connor then testified that he approached Whitaker and asked him to return to the store, to which he refused. O'Connor then stated that Whitaker claimed he did nothing wrong and "attempted to leave." In response, O'Connor told Whitaker that "if he was going to try to walk past [him] and leave the scene," he would be placed in handcuffs. After Whitaker again attempted to leave the scene, O'Connor "engage[d] on him" by grabbing his left arm but was unable to maintain his grip and a brief struggle ensued.
 {¶ 15} During the struggle, O'Connor testified that Whitaker's "arms were flailing," and that he was struck "several times," including once on the lip, and numerous times on his chest and arm. O'Connor also testified that once he wrestled Whitaker to the ground, Whitaker attempted to grab his arm in an effort to free himself and continued to struggle by "trying to shoulder throw and pull himself away" even after being placed in handcuffs.
 {¶ 16} In addition to O'Connor's testimony, William Miller, another Meijer employee, testified that he witnessed the confrontation between O'Connor and Whitaker. Specifically, Miller stated that he saw O'Connor approach White and Whitaker as they exited, and that Whitaker "put up a fight" when he was told to return to the store. Miller also testified that during the brief struggle Whitaker took "swings," threw punches, and continued to struggle with O'Connor even after he was brought back into the store.
 {¶ 17} Whitaker, testifying on his own behalf, presented a different version of the afternoon's events.
 {¶ 18} Whitaker testified that he had known White for approximately four months and that the pair smoked crack cocaine together. Whitaker also stated that he knew White *Page 6 
wanted to go to Meijer to "steal some stuff" so that they could purchase crack cocaine, but that he went to the store with the intent to merely sit and wait in the car. Whitaker then testified that after they arrived at the store, White asked Whitaker to accompany him inside, and he, "against [his] better judgment," went into the store to "watch" because he "wanted the crack." Whitaker continued by admitting that he followed White into the men's clothing department, and that he "grabbed pants or coveralls, * * *[and] folded them over" before handing them to White to put in the plastic bags.
 {¶ 19} Next, Whitaker testified that after White put the clothes in the bag he told him he was not a thief, that he was leaving, and he wanted to take "no part" in the crime. Whitaker then claimed that he became frightened after White threatened to shoot him and his children if he refused to take more clothes or to help hold the plastic bags open. Whitaker then stated that once he was done filling the bags, he walked out of the store "with nothing," while White followed closely behind.
 {¶ 20} Whitaker continued by stating that he saw store security following the pair as they exited the store, but that O'Connor never chased White after he dropped the bags in the parking lot and started to run. Instead, Whitaker testified that as soon as he exited the store O'Connor "come up on [him]" and asked him to return. Whitaker then testified that he refused to return to the store with O'Connor because he "didn't take anything" and "wasn't going anywhere." However, Whitaker later testified that he had actually tried to leave the scene even after being approached by O'Connor. Finally, in regard to his physical confrontation with O'Connor, Whitaker claimed that he "never took one swing at that man, not one," but instead, testified that O'Connor "hit his own self."
 {¶ 21} A similar issue was decided by the Ohio Supreme Court in State v. Thomas, 106 Ohio St.3d 133, 2005-Ohio-4106. In that case, the defendant left a store with stolen merchandise, dropped it, and continued to walk away from the store by entering a nearby *Page 7 
laundromat. Id. at ¶ 2. The defendant was then approached by a store security guard who asked him to return to the store, to which he agreed. Id. As the pair approached the store, however, the defendant struck the security guard in the face and attempted to flee. Id. The supreme court, in reversing the defendant's robbery conviction, noted that there was a lapse of time between the theft and his attempt to flee, so that the defendant's flight could not be said to have immediately followed the theft. Id. at ¶ 16. However, the court also noted that had the defendant struggled with the security guard "after being forced * * * to return to the store, then an ensuing injury, attempt to injure, or threat to injure might justify elevation of the offense from theft to robbery." (Emphasis added.) Id.
 {¶ 22} Based on our review of the record, we find the facts of this case demonstrate the exact scenario that the supreme court noted in Thomas could justify elevating the offense from theft to robbery. Id. In this case, the brief struggle between O'Connor and Whitaker occurred while O'Connor attempted to detain him for the commission of the theft offense. Here, based on the testimony presented, a rational jury could have found beyond a reasonable doubt that Whitaker's actions, including "flailing" his arms, throwing punches, and "trying to shoulder throw," was his attempt to inflict physical harm upon O'Connor so that he could flee. SeeState v. Beasley, Cuyahoga App. No. 87070, 2006-Ohio-2882, ¶ 16.
 {¶ 23} Further, there was no significant lapse of time or intervening act or event that occurred between the shoplifting incident, Whitaker's attempt to leave the scene, and his "flailing," which ultimately caused him to strike O'Connor "several times," including once on the lip. In fact, Whitaker himself testified that O'Connor never gave chase to White after he dropped the plastic bags and ran through the parking lot towards a nearby gas station. Instead, Whitaker testified that O'Connor "come up on [him]" almost instantly after the pair exited the store. As a result, a rational jury could have found beyond a reasonable doubt that Whitaker's actions in resisting O'Connor's attempts to apprehend him for the shoplifting *Page 8 
incident were "immediately after" the theft offense within the meaning of R.C. 2911.02(A). See, also, Oliver, 2005-Ohio-5792;State v. Roberson, Cuyahoga App. No. 88215, 2007-Ohio-1981;State v. Pigg, Scioto App. No. 04CA2947, 2005-Ohio-2227.
 {¶ 24} In light of the foregoing, we find that the jury could have concluded, in weighing the evidence, the credibility of the witnesses, and the testimony elicited at trial, that Whitaker was guilty of robbery in violation of R.C. 2911.02(A)(2). As a result, we cannot say that the jury clearly lost its way in finding the evidence presented by the state supported his robbery conviction. Therefore, because we cannot say Whitaker's conviction created such a miscarriage of justice that it must be reversed, we find no reason to disturb the jury's finding of guilt.
 {¶ 25} As we have already determined that Whitaker's conviction was not against the manifest weight of the evidence, we necessarily conclude that there was sufficient evidence to support the guilty verdict in this case. Accordingly, Whitaker's sole assignment of error is overruled.
 {¶ 26} Judgment affirmed.
YOUNG, P.J., and WALSH, J., concur. *Page 1