[Cite as *In re N.R.*, 2021-Ohio-1589.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| IN RE N.R. | : | |
| A Minor Child | : | No. 110144 |
| [Appeal by C.R., Mother] | : | |
| | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 6, 2021

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD-19909754

### *Appearances:*

Cullen Sweeney, Cuyahoga County Public Defender, and Britta M. Barthol, Assistant Public Defender, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorney, *for appellee* Cuyahoga County Department of Children and Family Services.

SEAN C. GALLAGHER, P.J.:

**{¶ 1}** Appellant, C.R. ("Mother"), appeals from the decision of the Cuyahoga County Court of Common Pleas, Juvenile Division ("juvenile court") that granted permanent custody of her child, N.R., to the Cuyahoga County Division of Children and Family Services ("CCDCFS" or "the agency") and terminated her parental rights. Upon review, we affirm.

**Background**

**{¶ 2}** On August 9, 2019, CCDCFS filed a complaint for abuse, neglect, and dependency, seeking a disposition of permanent custody, along with a motion for predispositional temporary custody. When the complaint was filed, it was for Mother's four children. N.R. is the youngest child and was nine years old. This was the third time the children were brought into the agency's custody, having been reunified with Mother twice before, after she completed case plan services.

**{¶ 3}** At the predispositional hearing, testimony was provided that revealed the present case came to the agency's attention because of concerns from a domestic violence incident. The agency then received a report stating Mother, who had a prior history of drug use, had been picked up on traffic warrants, and drugs were found on her, specifically heroin and Adderall. Mother also left the children with an inappropriate caregiver. The children's father ("Father") was incarcerated and had numerous drug charges. At the time of their removal, three of the children had lice. On August 12, 2019, the juvenile court granted predispositional temporary custody of all four children to CCDCFS.

{¶ 4} At the adjudicatory hearing held on October 28, 2019, Mother admitted to an amended complaint that stated she "has a substance abuse problem related to multiple illegal drugs that prevents her from providing appropriate care for the children" and "has participated in treatment but has failed to maintain her sobriety." The agency expressed concerns with Father for domestic violence, substance abuse, and lack of cooperation with the agency. Father had not participated in case plan services, and certified journal entries and docket entries were introduced showing Father had criminal convictions for drug offenses. The juvenile court adjudicated the children abused, neglected, and dependent on October 29, 2019.

{¶ 5} In August 2020, Mother's eldest child was placed in a planned permanent living arrangement with the agreement of Mother and Father. The case proceeded with the permanent-custody trial on October 8, 2020. Father did not appear. Mother agreed to placing two of her other children in the legal custody of a paternal relative. CCDCFS proceeded with its request for permanent custody of N.R., who was ten years old at the time of trial.

{¶ 6} A social worker involved in the case testified that N.R. and his siblings had been in the custody of the agency multiple times. The children had been placed in the custody of CCDCFS twice before; both times the children were reunited with Mother after case plan services were completed. However, the children again came into custody in 2019.

{¶ 7} Although Father had visitation with N.R., Father failed to participate in any case plan services, lacked stable housing, and was unable to provide for the basic needs of his children. The case plan objectives for Mother included housing, substance use, mental health, and domestic violence services. Although Mother completed portions of her case plan and engaged in services, concerns remained.

{¶ 8} The agency did not consider Mother in compliance with the substance abuse portion of the case plan. Mother has a history with substance abuse and was referred for an assessment. She completed intensive outpatient treatment at Ravenwood Health, but she moved from the area and did not complete the aftercare program. Beginning about July 2020 through the time of trial, Mother was engaged in a Suboxone drug-treatment program through her medical doctor. The social worker had not been able to verify Mother's services or sobriety in this program because she did not have the provider's information. However, beginning in April 2020, the agency asked Mother to submit to random drug screens once a month. Mother failed to report for any drug screens. The agency accounted for the situation with Covid-19 for the months of April and May. Mother also reported having transportation issues; however, her car was fixed in June 2020. Mother was asked to report for a drug screen in June, July, and August, but there were no results. The social worker did not ask her to report in September or October 2020 because she did not have a working number or contact information for Mother. The agency did not consider Mother to have successfully addressed the substance-abuse portion of her case plan because there were no drug screens to establish sobriety. The social

worker also testified that after the last two times N.R. came into the agency's care, Mother continued to have substance abuse issues. The social worker expressed the agency's concern for Mother's ability to provide long-term permanency because Mother had not shown that she maintained sobriety or that she is sober.

{¶ 9} Mother did complete the mental health portion of her case plan. Domestic violence remained an active part of Mother's case plan. Mother and Father had a history of domestic violence, and Mother completed domestic-violence services in the past. Mother did not want to be re-referred, and she stated she completed the services while she was in Ravenwood Health and signed a release for her records. The social worker contacted Ravenwood Health and was informed Mother had not completed domestic-violence services. Mother was living with a friend and was referred to Parma Collab for housing. The social worker testified that the friend's housing, though not ideal, was adequate. The social worker indicated Mother receives government assistance and has the means of supporting herself. The social worker conceded Mother had made significant progress on the case plan; however, concerns remained.

{¶ 10} The social worker testified that N.R. is bonded with and loves Mother. She stated that Mother would be able to address N.R.'s needs if returned to her custody. Mother had weekly visitation with N.R., Mother was consistent with visitation, and the visits were appropriate. The visits also included N.R.'s siblings. The social worker testified that if Mother were to continue with case plan services, that Mother would complete the case plan. Although the social worker testified it

was possible that Mother would be able to provide permanency for N.R. if given more time, N.R. had been in the custody of CCDCFS for over a year and the social worker continued to express concern because "[M]other's done it twice before."

{¶ 11} The agency was not seeking temporary custody because of the fact that this was the third time the child had come into agency care and Mother had not been able to provide continuous long-term stability for N.R. The social worker testified that the agency believed permanent custody was in the best interest of N.R. because "the child has spent a great majority of time in his life in and out of the system," had many placements in foster homes, and "the child deserves to have some type of stability and permanency."

{¶ 12} N.R., who requires ongoing mental health services, was placed in a foster home and is doing well in the foster placement. N.R.'s foster parent has a good relationship with the siblings' legal custodian, and the agency intended to maintain those relationships. The agency planned to pursue adoption.

{¶ 13} The social worker confirmed for the court that Mother had not provided any recent drug screens, and there was an assumption Mother would have tested positive. Although the social worker had not been able to check Mother's progress with the Suboxone program, Mother also had not provided results from testing in that program that would shed light on her sobriety. Further, Mother failed to submit to any of the agency's requests for random urine screens.

{¶ 14} A counselor from Ravenwood Health testified that Mother had successfully completed intensive outpatient treatment in January 2020, but Mother

did not participate in the eight-week aftercare portion of the program. The counselor testified that she had four 60-minute individual counseling sessions with Mother. She stated Mother was working on ongoing sobriety, sobriety maintenance, and addressing issues relating to reunification. Also, they discussed domestic violence at one of the appointments. The counselor testified that Mother would have benefitted from more sessions. The counselor further testified she made two attempts to administer drug screens for Mother, but she "was not successful in collecting a urine screen" from Mother. During the first attempt, the counselor walked Mother over to get screened, but Mother did not submit. During the second attempt, Mother had to leave because of her transportation. The counselor testified that providing drug screens validates whether sobriety is being maintained.

{¶ 15} The guardian ad litem for N.R. recommended a grant of permanent custody to CCDCFS as being in the best interest of the child. The GAL had been appointed as the GAL in the prior cases involving Mother's children, and he was again appointed in this case. He testified that Mother lacked stable housing over the course of the past two years. He stated that Mother was in a shelter prior to the pandemic, and prior to that, she was residing in a home that turned out to be inappropriate for the children based on the actions of other occupants in the house, and she had two other housing situations.

{¶ 16} The GAL also had concerns about Mother not submitting to the requested drug screens after her history of substance abuse. He further stated that it appeared Mother was still involved with Father and that this was concerning

because Mother has attributed her substance use and domestic violence issues to Father, who has not completed case plan services to address those issues.

{¶ 17} Following the trial, the parties submitted proposed findings of facts and conclusions of law. Mother requested that the agency's request for permanent custody be denied and that the court order the child be placed in the temporary custody of the agency.

{¶ 18} On November 5, 2020, the juvenile court issued a detailed decision granting permanent custody to CCDCFS and terminating the parental rights of Mother and Father. Mother timely filed this appeal.

**Assignments of Error**

{¶ 19} Mother raises three assignments of error for our review. Mother claims (1) the juvenile court's decision to award permanent custody to CCDCFS is against the manifest weight of the evidence and is not supported by clear and convincing evidence, (2) the juvenile court's finding that CCDCFS made reasonable efforts to reunify the family is against the weight of the evidence, and (3) the juvenile court abused its discretion because a disposition of temporary custody was available.

**Law and Analysis**

{¶ 20} It is well recognized that "[t]he right to parent one's child is a fundamental right." *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 28, citing *Troxel v. Granville*, 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); *In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997). However, the government has broad authority to intervene to protect a child from abuse and

neglect. *In re C.F.* at ¶ 28, citing R.C. 2151.01. "Overall, Ohio's child-welfare laws are designed to care for and protect children, 'whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety.'" *Id.* at ¶ 29, quoting R.C. 2151.01(A). Ultimately, the natural rights of a parent are always subject to the ultimate welfare of the child, which is the controlling principle to be observed. *In re B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, 21 N.E.3d 308, ¶ 20, citing *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979). Because of the fundamental interests involved, the authority to terminate parental rights is carefully circumscribed by statute in Ohio. *See In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 41-42.

{¶ 21} In her first assignment of error, Mother claims the trial court's decision to grant permanent custody to CCDCFS is against the manifest weight of the evidence. This court will not reverse a juvenile court's award of permanent custody "'if the record contains competent, credible evidence from which the court could have found the essential statutory elements have been established by clear and convincing evidence.'" *In re S.B.*, 8th Dist. Cuyahoga Nos. 110016 and 110017, 2021-Ohio-1091, ¶ 22, quoting *In re A.P.*, 8th Dist. Cuyahoga No. 104130, 2016-Ohio-5849, ¶ 16.

{¶ 22} In this case, CCDCFS filed a complaint for abuse, neglect, and dependency and requested a disposition of permanent custody of N.R. pursuant to R.C. 2151.353(A)(4). Pursuant to R.C. 2151.353(A)(4), if a child is adjudicated an

abused, neglected, or dependent child, then the court may commit the child to the permanent custody of a public children services agency "if the court determines in accordance with [R.C. 2151.414(E)] that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with [R.C. 2151.414(D)(1)] that the permanent commitment is in the best interest of the child." R.C. 2151.353(A)(4).

{¶ 23} With regard to the first requirement, in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the juvenile court must consider "all relevant evidence." R.C. 2151.414(E). Further, the trial court "shall enter" such a finding if the court determines by clear and convincing evidence that one or more of the enumerated factors in R.C. 2151.414(E) exists as to each of the child's parents. *Id.*

{¶ 24} In this case, the juvenile court determined by clear and convincing evidence that "the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent." The juvenile court specifically found the factors listed in R.C. 2151.414(E)(1) and (E)(2) existed by finding as follows:

> Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.
>
> The chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent

that is so severe that it makes the parents unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year from the time the Court holds the hearing.

{¶ 25} The juvenile court set forth relevant findings of fact to support the existence of these factors. The court made several findings pertaining to Father's failure to complete case plan services. The court also made a number of findings pertaining to Mother including, but not limited to, the following:

6. N.R. and his siblings have been in the custody of CCDCFS on two prior occasions due in part to the parents' substance abuse issues and lack of stable housing.

13. A case plan was filed with [the] Juvenile Court and approved which requires mother to complete recommended substance abuse and mental health services, complete domestic violence services and obtain stable housing.

14. Mother has failed to consistently engage in substance abuse services. She completed intensive outpatient treatment but failed to participate in aftercare.

15. Mother failed to demonstrate continued sobriety by failing to cooperate with random drug screens. She was asked to submit to screening by the assigned social worker every month between February and August of 2020 but did not submit to any screens. She was also asked to submit to screens by her counselor at Ravenwood Health Center on two occasions and did not submit either time.

16. Mother participated in counseling sessions at Ravenwood Health Center after completing intensive outpatient but only attended [four] sessions. According to her counselor, Mother would have benefitted from more sessions but stopped attending of her own accord.

17. Mother has failed to complete domestic violence services.

18. Mother lacks stable and independent housing. She currently resides with other individuals and does not have her own housing. Mother previously resided in a home with another individual who engaged inappropriate behavior toward N.R.

{¶ 26} Our review of the record shows that N.R. was removed largely due to Mother's substance abuse and lack of stable housing. Mother argues that although a case plan was filed with the court on September 3, 2019, it had not been formally approved by the juvenile court. Because Mother did not raise this error in a timely manner, Mother has forfeited all but plain error. *In re S.C.*, 9th Dist. Summit No. 27676, 2015-Ohio-2623, ¶ 11. The record demonstrates that CCDCFS did develop a case plan and make reasonable reunification efforts and that Mother was, in fact, offered case plan services. At the adjudicatory hearing on October 28, 2019, the parties agreed to continuing the disposition date to a later time to allow Mother additional time to work on the case plan. Mother has failed to demonstrate any prejudice occurred. Furthermore, pursuant to R.C. 2151.412(E), absent agreement by the parties or approval of the court, "the court can determine the contents of the case plan and journalize it as part of its dispositional order." *See In re Michael A.*, 8th Dist. Cuyahoga No. 79835, 2002-Ohio-1270, ¶ 42-44. Here, the juvenile court journalized as part of the dispositional order that the parents failed to substantially remedy the problems that caused N.R. to be placed outside the home, along with the components of the case plan. Upon our review, we find no plain error occurred.

{¶ 27} Mother also claims that the record shows she remedied the conditions causing the removal of N.R. The record reflects that Mother admitted to allegations in the amended complaint, including that she had a substance abuse problem that prevented her from providing appropriate care for the children. Mother completed case plan services in the past, and she engaged in case plan services in this case. She

finished the intensive outpatient program at Ravenwood Heath, attended individual counseling, and was participating in a Suboxone/methadone program. However, the record shows that Mother did not satisfy the substance-abuse portion of her case plan and did not establish stable housing for any consistent period of time.

{¶ 28} Although Mother claims there was no evidence to show she was abusing illegal substances, the social worker and Mother's individual counselor testified that Mother failed to provide drug screens or to demonstrate sobriety. The social worker assumed Mother "would probably test positive" because she failed to submit to drug screening. Mother's counselor testified that drug screens validate whether sobriety is being maintained. While a pandemic was occurring during the pendency of this case, the case had been pending for over a year at the time of trial and Mother had been given additional time between the adjudicatory hearing and the dispositional trial to work on the case plan. Moreover, although Mother had completed case plan services in the past and the social worker testified that Mother would be able to complete case plan services if given more time, the record reflects that concerns for Mother's substance abuse remained.

{¶ 29} Additionally, Mother claims the record reflects she has stable housing. She argues that she was residing with a friend while being referred for housing, and the social worker testified that Mother's housing is stable. However, the GAL testified that over the course of the last two years, Mother did not have consistent housing.

**{¶ 30}** Upon careful review, we find the juvenile court's findings relating to R.C. 2151.414(E), including the existence of the factors listed in R.C. 2151.414(E)(1) and (E)(2), are supported by competent, credible evidence in the record.

**{¶ 31}** The second requirement under R.C. 2151.353(A)(4) involves the juvenile court's best-interest determination in accordance with R.C. 2151.414(D)(1). In determining the best interest of a child in a permanent-custody hearing, the juvenile court is required under R.C. 2151.414(D)(1) to consider "all relevant factors," including, but not limited to the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents, and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody; and (5) whether any of the factors set forth in R.C. 2151.414(E)(7) to (11) apply. R.C. 2151.414(D)(1)(a)-(e).

**{¶ 32}** In conducting a best-interest analysis under R.C. 2151.414(D), "[t]he court must consider all of the elements in R.C. 2151.414(D) as well as other relevant factors. There is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56. Moreover, "[R.C. 2151.414(D)] requires a weighing of all the relevant factors * * * [and] requires the court to find the best option for the child

* * *."  *Id.* at ¶ 64.  "Although family unity is an important factor to consider, the paramount consideration is the best interest of the child."  *In re E.M.B.T.*, 8th Dist. Cuyahoga No. 109479, 2020-Ohio-4308, ¶ 32, quoting *In re J.S.*, 8th Dist. Cuyahoga No. 108406, 2019-Ohio-4467, ¶ 14.  As this court has repeatedly explained, "'[a] child's best interests require permanency and a safe and secure environment.'" *In re A.R.*, 8th Dist. Cuyahoga No. 103450, 2016-Ohio-1229, ¶ 22, quoting *In re Holyak*, 8th Dist. Cuyahoga No. 78890, 2001 Ohio App. LEXIS 3105 (July 12, 2001).

{¶ 33} In this case, the juvenile court set forth the best-interest factors under R.C. 2151.414(D)(1) that were considered, as well as other relevant factors, and determined by clear and convincing evidence "that a grant of permanent custody is in the best interest of the child."  Evidence in the record shows that N.R. had weekly visitation with Mother and the child's siblings, he loves and is bonded with Mother, and he wishes to be reunified with Mother.  However, this is the third time N.R. was brought into the custody of CCDCFS, and in this matter, the child had been in the predispositional temporary custody of the agency since August 12, 2019.  Although Mother previously engaged in case plan services and reached a place where it seemed appropriate for reunification, the record demonstrates that Mother has not been able to maintain sobriety.  The record shows that Mother completed portions of the case plan in this matter and that the social worker believed Mother would complete the case plan if given additional time and could provide for N.R.'s basic needs.  However, the agency was requesting permanent custody, rather than temporary custody, because Mother failed to establish sobriety and there were valid

concerns for the long-term stability for N.R. The record also reflects that N.R. has been in and out of the agency's custody three times over the last five years and the child is in need of a legally secure placement, which cannot be achieved by placement with appellant within a reasonable time or without a grant of permanent custody. N.R. is doing well in the current foster home, and his foster parent permits him to have visits with his siblings. Additionally, the GAL, who expressed concerns with Mother's failure to demonstrate sobriety and lack of stable housing, recommended a grant of permanent custody to CCDCFS. Upon a thorough review of the record in this case, we find competent, credible evidence to support the juvenile court's best-interest determination.

{¶ 34} Because the record contains competent, credible evidence from which the juvenile court could have found the essential statutory elements were established by clear and convincing evidence, we hold the award of permanent custody to CCDCFS and the termination of Mother's parental rights is not against the manifest weight of the evidence.

{¶ 35} Mother argues under the second assignment of error that the juvenile court's finding that CCDCFS made reasonable efforts to reunify the family is against the manifest weight of the evidence. She claims the juvenile court was required to make findings regarding reasonable efforts pursuant to R.C. 2151.419(A), which provides in relevant part:

> (1) Except as provided in division (A)(2) of this section, *at any hearing* held pursuant to section 2151.28, division (E) of section 2151.31, or section 2151.314, 2151.33, or 2151.353 of the Revised Code *at which*

*the court removes a child from the child's home or continues the removal of a child from the child's home*, the court shall determine whether the public children services agency or private child placing agency that filed the complaint in the case, removed the child from home, has custody of the child, or will be given custody of the child has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home. The agency shall have the burden of proving that it has made those reasonable efforts.

(Emphasis added.)

{¶ 36} Additionally, R.C. 2151.419(B) instructs that a court making a reasonable-efforts determination under R.C. 2151.419(A)(1) is required to issue written findings of fact, set forth the reasons supporting its determination, and briefly describe the relevant services provided by the agency and why those services did not prevent removal of the child from the home or enable the child to return safely home.

{¶ 37} Here, the record reflects that the juvenile court made a reasonable-efforts determination in its order placing N.R. in the predispositional temporary custody of the agency in August 2019, when the court determined as follows:

The Court further finds that reasonable efforts were made to prevent the removal of the child from the home, to eliminate the continued removal of the child from home, or to make it possible for the child to return home. The relevant services provided by the Agency to the family of the child and reasons why those services did not prevent the removal of the child from the home or enable the child to return home are as follows: Substance abuse assessment and treatment, mental health assessment and treatment, Tapestry services, and referrals to community collaborative. However, more services need to be completed to alleviate the risk to the child.

**{¶ 38}** Nonetheless, Mother argues that the juvenile court was required to make a reasonable-efforts determination at any hearing held pursuant to R.C. 2151.353. Her argument is not consistent with the plain language of R.C. 2151.419(A), which refers to hearings "at which the court removes a child from the child's home or continues the removal of a child from the child's home[.]" As the Supreme Court of Ohio has indicated, the sections of the Revised Code to which to R.C. 2151.419(A) applies "involve adjudicatory, emergency, detention, and temporary-disposition hearings, and dispositional hearings for abused, neglected, or dependent children, all of which occur prior to a decision transferring permanent custody to the state." *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, at ¶ 41. If the state has not established that reasonable efforts have been made prior to the permanent-custody hearing, then it must demonstrate such efforts at that time. *See id.* at ¶ 43. The cases cited by Mother do not suggest otherwise, and none involved a permanent-custody hearing where a prior reasonable-efforts determination had been made. As this court has previously determined, a reasonable-efforts determination is not required at a permanent-custody hearing under R.C. 2151.353(A)(4) when the record demonstrates a reasonable-efforts determination was made earlier in the proceedings. *In re A.R.*, 8th Dist. Cuyahoga No. 109482, 2020-Ohio-5005, at ¶ 32.

**{¶ 39}** Nonetheless, the record herein reflects that the juvenile court again made reasonable-efforts findings in the decision awarding permanent custody to CCDCFS. The juvenile court found as follows:

The Court further finds that CCDCFS has made reasonable efforts to finalize the permanency plan for the child. Those efforts include substance abuse, mental health, housing, and domestic violence. The permanency plan for the child is reunification. The concurrent permanency plan is permanent custody and adoption. The permanency plan for the child is approved.

{¶ 40} The juvenile court further found:

Following the placement of the child outside of the child's home, and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially [caused] the child to be placed outside the home, the parent has failed consistently and repeatedly to substantially remedy the conditions causing the child to be placed outside the home.

{¶ 41} Mother argues that the juvenile court only stated the case plan objectives and did not set forth the relevant services provided by the agency that would have enabled N.R. to be returned to Mother's care. However, relevant services provided were set forth in the court's predispositional order. In the dispositional order, the juvenile court briefly described relevant services in which Mother participated and indicated Mother's failure to participate in other services. The juvenile court's findings are supported by competent, credible evidence in the record, and its decision to award permanent custody of the child to CCDCFS is not against the manifest weight of the evidence.

{¶ 42} Finally, Mother argues under the third assignment of error that the juvenile court abused its discretion by granting permanent custody when a disposition of temporary custody was available. She argues that she should be given additional time to prove her sobriety. "[R.C. 2151.414(B)] does not make the availability of a placement that would not require a termination of parental rights

an all-controlling factor.  The statute does not even require the court to weigh that factor more heavily than other factors." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, at ¶ 64.  Under the circumstances of this case, we find no abuse of discretion by the juvenile court.

**Conclusion**

{¶ 43} After careful consideration of the record, we find that the juvenile court's decision to award permanent custody to CCDCFS and terminate Mother's parental rights is supported by competent, credible evidence in the record and is not against the manifest weight of the evidence.  Furthermore, under the circumstances of this particular case, the juvenile court did not abuse its discretion by not extending N.R.'s temporary custody.  We overrule all assignments of error.

{¶ 44} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, PRESIDING JUDGE

ANITA LASTER MAYS, J., and
MARY EILEEN KILBANE, J., CONCUR