[Cite as *In re R.L.*, 2022-Ohio-1179.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN RE: R.L.

JUDGES:
Hon. W. Scott Gwin, P.J.
Hon. William B. Hoffman, J.
Hon. Craig R. Baldwin, J.

Case Nos. 2021 CA 0070 &
2021 CA 0071

O P I N I O N

CHARACTER OF PROCEEDINGS:     Appeal from the Richland County Court of
Common Pleas, Juvenile Division, Case
No. 2019 DEP 00164

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     April 6, 2022

APPEARANCES:

For Plaintiff-Appellee

CHRISTOPHER ZUERCHER
TIFFANY BIRD
GINA NENNIG
Richland County Children Services
731 Scholl Road
Mansfield, Ohio 44907

For Father-Appellant

BRIAN A. SMITH
Brian A. Smith Law Firm, LLC
123 South Miller Road – Suite #250
Fairlawn, Ohio 44333

For Mother-Appellant                              CASA

DARIN AVERY                                       411 S. Diamond Street
105 Surges Avenue                                 Mansfield, Ohio 44902
Mansfield, Ohio 44903

*Hoffman, J.*

**{¶1}** In Richland App. No. 21CA70, appellant Charles Warfel ("Father") appeals the August 31, 2021 Judgment Entry entered by the Richland County Court of Common Pleas, Juvenile Division, which overruled his objections to the magistrate's July 29, 2021 decision, and approved and adopted said decision as order of the court. In Richland App. No. 21CA71, appellant Nicole Longden ("Mother") appeals the same judgment entry, overruling her objections to the magistrate's July 29, 2021 decision. Appellee is the Richland County Children Services Board ("RCCS").

## STATEMENT OF THE CASE AND FACTS

**{¶2}** Mother and Father are the biological parents of R.L. ("the Child"). Paternity was established after the trial court ordered Father to submit to genetic testing.

**{¶3}** On July 29, 2019, the trial court issued an ex-parte emergency order of removal of the Child. On the same day, RCCS filed a complaint, alleging the Child was dependent and neglected. The complaint asserted RCCS was contacted after Mother and the Child arrived by ambulance at the Emergency Department of OhioHealth Shelby Hospital. Mother was requesting a Sexual Assault Nurse Examination ("SANE") of the Child because the Child was acting inappropriately. Upon their arrival, hospital staff determined Mother was under the influence of methamphetamines. In addition, RCCS had investigated the family in March, and June, 2019, due to allegations Mother and Father were using illegal substances while caring for the Child.

**{¶4}** The trial court conducted a shelter care hearing on July 30, 2019, and placed the Child in the emergency shelter care of RCCS. The trial court appointed Julia Kleshinski as Guardian ad Litem ("GAL") for the Child. On August 14, 2019, RCCS amended the complaint, adding an allegation of abuse, and requested temporary custody

to the Child's maternal aunt and uncle, Crystal and Andrew Kanz, with an order of protective supervision to RCCS.

**{¶5}** At an adjudicatory hearing on August 29, 2019, RCCS withdrew its allegations of abuse and neglect, Parents admitted the Child was dependent, and the magistrate so found. Via Magistrate's Temporary Order filed September 19, 2019, the Child was placed in the temporary custody of Crystal and Andrew Kanz. The magistrate memorialized the finding of dependency via Magistrate's Decision Adjudicatory Hearing filed October 3, 2019. The trial court approved the magistrate's decision on the same day. Subsequently, the Child's maternal aunt and uncle withdrew their consent to receive custody. Following a dispositional hearing on October 25, 2019, the magistrate placed the Child in the temporary custody of RCCS. The trial court approved the magistrate's decision via judgment entry filed October 30, 2019.

**{¶6}** Parents filed a motion to reunite or, in the alternative, to amend visitation on May 7, 2020. RCCS filed a motion for disposition on July 14, 2020, requesting an extension of temporary custody. Father and Mother completed their psychological evaluations and parenting assessments on November 2, 2020. The reports were completed on December 26, and 28, 2020, respectively. The assessor's prognosis for reunification was noted as poor.

**{¶7}** On January 8, 2021, RCCS filed a motion for disposition, requesting permanent custody of the Child. Parents withdrew their motion to reunite on January 19, 2021. Parents filed a second motion to reunite or, in the alternative, to amend visitation on January 28, 2021. The magistrate conducted a hearing on RCCS's motion for permanent custody on April 20, and June 24, 2021.

{¶8}   In the Magistrate's Decision filed July 29, 2021, the magistrate made the following, relevant Findings of Fact:

8. * * * [The] Case Plan, together with subsequent amendments, required that [Mother] and [Father] each submit to substance abuse and mental health evaluations and follow through with any treatment recommended thereby; participate in parental education; and attend supervised visitation with [the Child] at Children Services.  By Case Plan Amendment, filed March 17, 2020 and approved by the Court April 10, 2020, the Court required that a "parent educator" attend visitation between [the Child] and her parents based upon inappropriate conduct by [Father] and [the Child's] reaction thereto.

* * *

9. [Mother] and [Father] participated in parental education through the Catalyst "triple P" program and through a virtual program with CACY with some success, although Kylie Peterson, who worked with them at CACY, commented on inappropriate statements by [Father] both to [the Child] and to Peterson.  For example, while reading a book about "Chip and Dale," (cartoon squirrels), [Father] commented to [the Child] that "Daddy used to be a 'Chippendale'" (a male exotic dancer), adding "I hope she [the Child] doesn't know what that means."  [Father] also completed the Father's First program.  Children Services and CACY each indicated that [Mother] and [Father] might benefit from more parental education.  According to

Caseworker Jackson, both [Mother] and [Father] have been resistant and sporadic as to their participation in mental health counseling. As to substance abuse counseling and treatment, [Mother] has had apparent success. [Father] was terminated from treatment at Mansfield Opiate Recovery for attempting to sell his medication and for a disturbance at their facility. He reports that he is engaged in medication assisted therapy (MAT) at Buckeye Opiate Recovery in Columbus, Ohio, although his participation and degree of success are unknown.

10. [Mother] and [Father] have maintained regular supervised visitation at Children Services. While they attend regularly, [Father's] behavior at times has been problematic and disturbing both to [the Child] and to the Family Support Specialists who supervise visitation. Jackie Johnson observed [Father] "interrogating" the foster parents prior to visitation. He frequently was loud and aggressive, which was upsetting to [the Child], and resisted efforts to moderate his behavior. At a visit in September of 2019, when [the Child] was about two and one-half years old, he approached her in a disturbing "panther craw"; and encouraged her against her will to wear artificial "press-on" nails, then encouraging her to scratch him with them. According to others who observed [Father's] visitation, episodes of [Father's] inappropriate conversation and behavior and his aggressive and frustrated response to correction occurred with some frequency. According to Family Support Specialists Johnson and Crouse, [Mother] at times took steps to calm [Father] through these

episodes; and in the words of Crouse, "[Mother] has come a long way." However, both observed [Mother's] relationship with [the Child] at visitation to be cold and distant, only ripening to an open and affectionate relationship recently. Despite these difficulties, both visitation supervisors have observed times of pleasant and appropriate interaction between [the Child] and her parents at visitation.

11. As reflected in the preceding paragraph and in the report of the CASA/Guardian ad Litem, [Father's] history of turbulent and aggressive behavior, often involving law enforcement, raises concern as to his ability to parent [the Child] and questions as to whether [Father], with the influence of [Mother], can moderate that behavior. Officer Magers testified as to a "road rage" incident in Shelby in 2020, which resulted in [Father] being charged with disorderly conduct. Patrolman Stantz and Doctor Butts each testified about [Father'] aggressive, insufficiently controlled reaction when he was terminated from Mansfield Opiate Recovery for purportedly attempting to sell his medication [on] March 5, 2020. His history with law enforcement documented in the CASA report . . . indicates this [is] a long-term and chronic problem.

* * *

13. The examiner in [Mother's] Lighthouse evaluation . . . documents [Father's] past diagnoses of Antisocial Personality Disorder and Children Services observations of his aggressive and loud behavior and unwanted touching of [the Child] at visitation. In his evaluation . . ., [Father]

acknowledges his conviction for felony Domestic Violence and two other domestically violent incidents with previous partners. He acknowledges past illegal drug use and commercial drug activity. At one point, he acknowledges that he currently is involved in medication assisted therapy (MAT) and using suboxone, a replacement for opiates, while later claiming he weaned himself from suboxone. He was imprisoned for Gross Sexual Imposition at age 42 (He was 58 at trial), pleading to that charge in exchange for dismissal of abduction, attempted rape, and other charges. He was found guilty of Disorderly Conduct shortly before his Lighthouse Examination. When asked by the examiner if there was anything that he wished to change about himself, he responded "No."

14. The Lighthouse examiner provided a diagnosis of [Father] as Other Specified Personality Disorder with antisocial and narcissistic traits... She described his clinical interview as "fraught with contradiction." * * * The Lighthouse examiner concludes:

At the age of 57, [Father] presents multiple liabilities associated with his capacity to safely and competently raise a child. Although it is not uncommon for individuals in their 20s, and even into their 30s, to engage in problematic behaviors and subsequently mature, many of [Father's] offenses occurred as recently as his late 40s. . . . [Father] described a longstanding pattern of engaging in criminal, violent, and dangerous behaviors that have not subsided as he has aged. Consequently, this examiner has little confidence that any treatment recommendations offered

by this examiner might address or remediate [Father's] anger management and impulse control problems, his exceedingly poor judgment, and his problematic parenting practices.

Observing that "[Mother] [has] demonstrated an inability to compensate for [Father'] behaviors, the Lighthouse report concludes by recommending extensive and long-term services which should be implemented and completed before reunification can safely occur.

15. [Mother's] evaluation from Lighthouse reveals a concerning substance abuse history, [Mother's] own emotional issues, and her persistent attachment to an "unhealthy relationship" with [Father]. According to the examiner, [Mother] was "less than forthcoming when asked to discuss the dysfunction that occurred in her relation with [Father]" and "meets the criteria for Dependent Personality Disorder." * * * She acknowledges that she is "sometimes too withdrawn," both in providing affection and comfort with [the Child] and in intervening when [Father's] behavior is inappropriate. [Mother] remains with [Father] despite his criminal history, including a sexually-oriented offense. She and [Father] both have engaged in drug abuse and illegal sales of controlled substances. She describes [Father] as a "relaxed and playful parent" in contrast to the observation of others and denies episodes of domestic violence and discord despite contrary observations of Children Services and a record of law enforcement visits to her home. Most pointedly, the examiner observes:

Per the RCCS, [Children Services] [Mother] did not intervene to correct [Father's] behaviors, despite reports that [the Child] sought solace from [Mother] and agency representatives.   This reported observation reveals serious concerns with [Mother's] perception of and insight into [Father's] interactions with [the Child].   Without insight into [Father's] problematic behaviors[,] [Mother] will not be able to intervene and protect her child or correct [Father].

\* \* \* The Lighthouse report for [Mother], like that for [Father], concludes by recommending extensive and long-term services which should be implemented and completed before reunification can safely occur.

July 29, 2021 Magistrate's Decision at 2-7, unpaginated.

{¶9}    After analyzing the applicable law, the magistrate ordered all of Parents' residual parental rights be terminated and permanent custody of the Child be granted to RCCS.  The magistrate found the Child had been in the temporary custody of RCCS for more than twelve months of a consecutive 22-month period, and the Child could not be placed with either Mother or Father within a reasonable period of time and should not be placed with Parents.  The magistrate also found it was in the Child's best interest to grant permanent custody to RCCS.  Parents filed objections to the magistrate's decision on August 12, 2021.

{¶10} Via Judgment Entry filed August 31, 2021, the trial court overruled Parents' objections.   The trial court found Parents failed to request Findings of Fact and

Conclusions of Law and failed to provide a transcript of the permanent custody hearing. The trial court concluded, "to the extent that any objection may related to the Magistrate's Findings of Fact, the Court overrules the same summarily." Aug. 31, 2021 Judgment Entry at 2. The trial court further found, "No error of law or other defect appears on the face of the Magistrate's Decision." *Id.*

**{¶11}** It is from this judgment entry, Mother and Father individually appeal.

**{¶12}** In Richland App. No. 21CA70, Father raises the following assignments of error:

I. THE TRIAL COURT'S RULING, GRANTING APPELLEE'S MOTION FOR PERMANENT CUSTODY, WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

II. THE TRIAL COURT'S RULING, GRANTING APPELLEE'S MOTION FOR PERMANENT CUSTODY, WAS IN ERROR, BECAUSE APPELLEE DID NOT SHOW THAT IT HAD MADE "REASONABLE EFFORTS" TO REUNITE THE FAMILY PURSUANT TO R.C. 2151.419.

III. THE FAILURE OF APPELLANT'S TRIAL COUNSEL TO SUPPLEMENT APPELLANT'S OBJECTIONS TO THE MAGISTRATE'S DECISION WITH A TRANSCRIPT OF PROCEEDINGS CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL AND VIOLATED APPELLANT'S RIGHT TO DUE PROCESS UNDER ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

IV. THE FAILURE OF APPELLANT'S TRIAL COUNSEL TO OBJECT TO IMPROPER TESTIMONY DURING THE DISPOSITION HEARING CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL AND VIOLATED APPELLANT'S RIGHT TO DUE PROCESS UNDER ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

V. THE CUMULATIVE ERRORS OF APPELLANT'S TRIAL COUNSEL CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL AND VIOLATED APPELLANT'S RIGHT TO DUE PROCESS UNDER ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION AND THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

{¶13} In Richland App. No. 21CA71, Mother raises the following assignments of error:

I. THE PARENTS RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.

II. THE COURT ERRED IN FINDING THAT THE AGENCY MADE REASONABLE EFFORTS "TO PREVENT THE REMOVAL OF THE CHILD FROM THE CHILD'S HOME, TO ELIMINATE THE CONTINUED

REMOVAL OF THE CHILD FROM THE CHILD'S HOME, OR TO MAKE IT POSSIBLE FOR THE CHILD TO RETURN SAFELY HOME."

III. THE COURT ERRED IN RECOGNIZING AND GIVING ANY CREDENCE TO THE ASSESSMENTS OF THE PARENTS' CAPACITY TO PARENT THE CHILD IN A SAFE AND COMPETENT MANNER.

IV. THE COURT ERRED IN GRANTING PERMANENT CUSTODY TO RCCS.

V. THE COURT ERRED IN HOLDING A HEARING ON THE MOTION OF RCCS.

**{¶14}** These cases come to us on the expedited calendar and shall be considered in compliance with App. R. 11.2(C).

FATHER

I

MOTHER

IV

**{¶15}** As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries* (Feb. 10, 1982), Stark App. No. CA5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578.

{¶16} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long term foster care.

{¶17} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶18} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶19} If the child is not abandoned or orphaned, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not

be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

**{¶20}** The trial court specifically found the Child could not be placed with Mother or Father within a reasonable period of time and should not be placed with them pursuant to R.C. 2151.414(E)(1) and (E)(2).

**{¶21}** R.C. 2151.414 provides, in relevant part:

(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency

to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code.

**{¶22}** As set forth in our Statement of the Facts and Case, supra, we find there was sufficient and substantial competent evidence Parents failed to remedy the problems which initially caused the removal of the Child from their home. Although Parents participated in their case plan services, their progress was insufficient. Parents attended parenting education, however, their caseworker and the parenting educator both believed

Parents would benefit from additional parenting education.  Parents were resistant to and sporadic with their mental health treatment.

**{¶23}**  Mother had only recently become less cold and distant with the Child.  When Father acted inappropriately with the Child and visitation supervisors, Mother failed to intervene to correct Father's behaviors.  Dr. Thomas diagnosed Mother with Dependent Personality Disorder.   Dr. Thomas noted Mother did not have insight into Father's problematic behavior, making it difficult for her to intervene and protect the Child, or correct Father.   Dr. Thomas recommended extensive and long-term services be implemented and completed before reunification could safely occur.

**{¶24}**  Father was terminated from treatment at Mansfield Opiate Recovery for attempting to sell his medication and for causing a disturbance at the facility.  Although Father indicated he was engaged in medication assisted therapy at Buckeye Opiate Recovery, information regarding his participation and any success resulting therefrom was not provided to the trial court.  Dr. Thomas diagnosed Father with Other Specified Personality Disorder with antisocial and narcissistic traits.  Father had a long history of criminal, violent, and dangerous behaviors, and such behaviors had continued despite his being in his late 50s.  Father had anger management and impulse control problems. Father had a conviction for felony domestic violence and was imprisoned for gross sexual imposition.  He had been convicted of disorderly conduct in late 2020. As with Mother, Dr. Thomas recommended extensive and long-term services be implemented and completed before reunification could safely occur.

**{¶25}**  The trial court also found, pursuant to R.C. 2151.414(B)(1)(d), the Child had been in the temporary custody of RCCS for a period of time in excess of twelve of the

prior twenty-two consecutive months. The 12 of 22 finding alone, in conjunction with a best interest finding, is sufficient to support the grant of permanent custody. *In re Calhoun,* 5th Dist. No. 2008CA00118, 2008-Ohio-5458, ¶ 45.

**{¶26}** The evidence presented during the best interest portion of the hearing revealed the Child has a close and loving relationship with her foster parents. When the Child was first placed with the foster family, she engaged in defiant behavior and tantrums. However, the issues have resolved over time. The Child is comfortable with her daily routine and feels "part of the family." She gets along with her foster siblings and the family dog. The foster family has the economic and emotional resources to provide the Child with everything she needs.

**{¶27}** Based upon the foregoing, we find the trial court's finding the Child could not be placed with Parents within a reasonable period of time or should not be placed with them is not against the manifest weight of the evidence. We further find the trial court's finding it was in the Child's best interests to grant permanent custody to RCCS is not against the manifest weight of the evidence.

**{¶28}** Father's first assignment of error and Mother's fourth assignment of error are overruled.

FATHER

II

MOTHER

II

{¶29} In their second assignments of error, Parents argue the trial court erred in granting permanent custody of the Child to RCCS because the Department failed to make reasonable efforts to reunify the Child with them.

{¶30} The Ohio Revised Code imposes a duty on the part of children services agencies to make reasonable efforts to reunite parents with their children where the agency has removed the children from the home. R.C. 2151.419. "Case plans are the tools that child protective service agencies use to facilitate the reunification of families who * * * have been temporarily separated." *In re Evans*, 3d Dist. Allen No. 1-01-75, 2001 WL 1333979, *3, 2001 Ohio App. LEXIS 4809, 3 (Oct. 30, 2001). To that end, case plans establish individualized concerns and goals, along with the steps that the parties and the agency can take to achieve reunification. *Id.*

{¶31} " 'Reasonable efforts means that a children's services agency must act diligently and provide services appropriate to the family's need to prevent the child's removal or as a predicate to reunification.' " *In re H.M.K.*, 3d Dist. Wyandot Nos. 16-12-15 and Wyandot Nos. 16-12-16, 2013-Ohio-4317, ¶ 95, quoting *In re D.A.*, 6th Dist. Lucas No. L-11-1197, 2012-Ohio-1104, ¶ 30. "In determining whether the agency made reasonable efforts [pursuant to R.C. 2151.419(A)(1)] to prevent the removal of the child from the home, the issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute." *In re Lewis*, 4th

Dist. No. 03CA12, 2003-Ohio-5262, at ¶ 16. " 'Reasonable efforts' does not mean all available efforts." *Id.* A "reasonable effort" is "* * * an honest, purposeful effort, free of malice and the design to defraud or to seek an unconscionable advantage." *In re Weaver*, 79 Ohio App.3d 59, 63, 606 N.E.2d 1011(12th Dist. 1992).

**{¶32}** As set forth in our Statement of the Case and Facts, supra, RCCS made reasonable efforts to reunite Mother and Father with the Child by establishing a workable case plans which included services to address concerns with Parents' mental health issues, substance abuse issues, and parenting skills. Parents participated in parenting education. However, Father's behavior at visits had, at times, been inappropriate and disturbing to the Child and Family Support Specialists. Mother was often cold and distant with the Child. Parents were "resistant and sporadic as to their participation in mental health counseling." July 29, 2021 Magistrate's Decision, Findings of Fact 9. Mother had some success with her substance abuse treatment and counseling. Father was terminated from treatment for attempting to sell his medication and for causing a disturbance at the facility of Mansfield Opiate Recovery.

**{¶33}** Mother maintains "RCCS failed repeatedly to grant additional visitation time that would have allowed the parents to exercise and demonstrate the skills they obtained in their parenting classes." Brief of Mother-Appellant at 13. "The lack of visitation does not constitute a failure to use reasonable efforts." *In the Matter of Y.M., Q.D., M.D., & Y.M.*, 5th Dist. Tusc. Nos. 2021 AP 09 0020, 2021 AP 09 0021, 2021 AP 09 0022, & 2021 AP 09 0023, 2022-Ohio-677, ¶59.

**{¶34}** Father and Mother both assert RCCS did not provide them with an opportunity to follow through with the recommendations of the psychological assessments

and failed to assist Parents in engaging in certain services the evaluator recommended. The trial court found the Child had been in the temporary custody of RCCS for twelve or more months of a consecutive 22-month period. Following Parents' psychological evaluations, Dr. Aimee Thomas of Lighthouse Family Center concluded extensive and long-term services needed to be implemented and completed before reunification could safely occur. We find the Child deserved permanency in a safe and stable environment. The Child should not be kept in limbo waiting for Parents to complete services. The ultimate welfare of a child is the polestar or controlling principle to be observed. See, *In re Cunningham,* 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979).

**{¶35}** Further, the record reflects the trial court made several reasonable efforts findings prior to the permanent custody hearing.[1] A reasonable efforts determination is not required at a permanent custody hearing under R.C. 2151.353(A)(4) when the record demonstrates such determination was made earlier in the proceedings. *In re N.R.*, 8th Dist. Cuyahoga No. 110144, 2021-Ohio-1589, ¶ 38, citing *In re A.R.*, 8th Dist. Cuyahoga No. 109482, 2020-Ohio-5005, ¶ 32. However, if the agency has not established reasonable efforts have been made prior to the permanent custody hearing, then it must demonstrate such efforts at that time. *In re N.R.* at ¶ 38, citing *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 43. In this case, after each hearing which resulted in the removal of the Child from Parents' custody or continued her placement outside the home, the trial court found RCCS used reasonable efforts to prevent the Child's continued

---

[1] See, e.g., September 9, 2019 Magistrate's Temporary Order; October 10, 2019 Magistrate's Temporary Order; October 30, 2019 Magistrate's Decision; April 8, 2020 Magistrate's Decision; July 30, 2020 Magistrate's Decision and Order; and January 20, 2021 Magistrate's Order.

removal or to make it possible for her to safely return home. *See* R.C. 2151.419(A)(1). At no time did Father or Mother challenge the reasonable efforts findings.

**{¶36}** Based upon the foregoing, we find RCCS used reasonable efforts to reunify the Child with Parents.

**{¶37}** Father and Mother's second assignments of error are overruled.

FATHER

III, IV, V

MOTHER

I

**{¶38}** Father's third, fourth, and fifth assignments of error and Mother's first assignment of error raise claims of ineffective assistance of counsel. In Father's third assignment of error and Mother's first assignment of error, Parents contend trial counsel was ineffective for failing to supplement their objections to the magistrate's July 29, 2021 decision and failing to file a transcript of the permanent custody proceedings. In his fourth assignment of error, Father asserts trial court was ineffective for failing to object to the testimony of RCCS caseworker Catherine Cook. In his fifth assignment of error, Father maintains he was denied his right to the effective assistance of counsel and his right to due process as a result of the cumulative errors of trial counsel.

**{¶39}** "A parent is entitled to the effective assistance of counsel in cases involving the involuntary termination of his or her parental rights." *In re B.J. & L.J.*, 12th Dist. Warren Nos. CA2016-05-036 and Warren Nos. CA2016-05-038, 2016-Ohio-7440, ¶ 68. This is because "parental rights involve a fundamental liberty interest, procedural due process, which includes the right to effective assistance of counsel * * *." *In re Tyas*, 12th Dist.

Clinton No. CA2002-02-010, 2002-Ohio-6679, ¶ 4, citing *In re Heston*, 129 Ohio App.3d 825, 827, 719 N.E.2d 93 (1998).

**{¶40}** "In permanent custody proceedings, where parents face losing their children, we apply the same test as the test for ineffective assistance of counsel in criminal cases." *In re E.C.*, 3d Dist. Hancock No. 5-15-01, 2015-Ohio-2211, ¶ 40.

**{¶41}** To prove an allegation of ineffective assistance of counsel, an appellant must satisfy a two-prong test. First, an appellant must establish counsel's performance has fallen below an objective standard of reasonable representation. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. Second, an appellant must demonstrate he or she was prejudiced by counsel's performance. *Id .* To show he or she has been prejudiced by counsel's deficient performance, an appellant must prove, but for counsel's errors, the result of the trial would have been different. *Bradley,* at paragraph three of the syllabus.

**{¶42}** An appellant bears the burden of proof on the issue of counsel's effectiveness. *State v. Calhoun,* 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999). In Ohio, a licensed attorney is presumed competent. *Id.*

*Failure to Supplement Objections and Failure to File Transcript*

**{¶43}** "[A]n appellant's arguments in regard to claims of ineffective assistance of counsel in the context of a magistrate's hearing are not waived by trial counsel's failure to raise such objections at the trial court level." *Matter of B.J.,* 5th Dist. Richland No. 18 CA 106, 2019-Ohio-1062, ¶ 34. (Citation omitted). "By extension, in cases where an appellant seeks a *Strickland* review on the grounds that his or her trial counsel failed to object under Juv.R. 40 and failed to timely obtain a transcript of the magistrate's hearing for the trial court judge to review, an appellate court may, in the interest of justice, examine the evidence presented to the magistrate via the transcript and exhibits, despite the fact that they were not available below." *Id.*; see, also, *In re Oliver*, 5th Dist. Licking No. 2005-CA-40, 2005-Ohio-5792, ¶¶ 21-24.

**{¶44}** Parents suggest had trial counsel supplemented their objections and requested the transcript of the proceedings, the trial court would not have granted permanent custody to RCCS.  We find this argument is purely speculative and insufficient to satisfy their burden of demonstrating prejudice.  We have reviewed the transcript of the proceedings and find there was clear and convincing evidence to support the trial court's decision to grant permanent custody of the Child to RCCS.

*Failure to Object to Testimony of Catherine Cook*

**{¶45}** Father further asserts he was denied the effective assistance of counsel as the result of trial counsel's failure to object to portions of the testimony of Catherine Cook, an RCCS caseworker, which, according to Father, inferred nefarious behavior on the part of individuals with whom he was associated.

**{¶46}** The magistrate did not make any findings relative to this portion of Cook's testimony. In fact, the magistrate specifically found the testimony "rais[ed] an implication that [Father] might be dealing drugs." Tr. at 247. The magistrate indicated, I will be disregarding things that lie in the area of supposition and implication, and relying solely on the things that play into, to clear and convincing evidence." *Id*. The magistrate added, "I know that's a possibility. It is not something I can consider based upon what I've heard." *Id*. at 248. Accordingly, we find Father cannot demonstrate he was prejudiced by trial counsel's failure to object to Cook's testimony.

*Cumulative Errors*

**{¶47}** Father also argues trial counsel's cumulative errors and omissions violated his constitutional right to the effective assistance of counsel. However, because none of Father's individual claims of ineffective assistance has merit, he cannot establish a right to relief simply by joining those claims together. "Where no individual, prejudicial error has been shown, there can be no cumulative error." *State v. Jones,* 2d Dist. Montgomery No. 20349, 2005–Ohio–1208, ¶ 66 (Citation omitted).

**{¶48}** Based upon the foregoing, we find Parents are unable to establish they were prejudiced as the result of trial counsel's alleged deficient performance.

**{¶49}** Father's third, fourth, and fifth assignments of error and Mother's first assignment of error are overruled.

MOTHER

III

**{¶50}** In her third assignment of error, Mother submits the trial court erred in recognizing and giving credence to the assessments of Dr. Aimee Thomas relative to

Parents' capacity to parent the Child in a safe and competent manner.  Mother contends, because neither Parents nor RCCS asked the trial court to recognize Dr. Thomas as an expert, and Dr. Thomas' testimony and reports do not establish she has any expertise on parenting, Dr. Thomas offered prospective opinions, which the trial court should not have relied upon in reaching its decision on permanent custody.

**{¶51}** We note, at the commencement of the hearing on RCCS's motion for permanent custody, Parents stipulated to the admission of the Dr. Thomas' written psychological and parenting evaluations.  Accordingly, the information contained therein was properly before the trial court.

**{¶52}** Mother concedes neither she nor Father objected to the admission of Dr. Thomas' testimony, to her qualifications, or to RCCS's failure to move for her designation as an expert. "Normally, the failure to timely object at trial to allegedly inadmissible evidence waives all claims of error except for plain error." *State v. Bahns*, 185 Ohio App.3d 805, 2009-Ohio-5525, 925 N.E.2d 1025, ¶ 19 (Citation omitted).

**{¶53}** "A 'plain error' is obvious and prejudicial although neither objected to nor affirmatively waived which, if permitted, would have a material adverse effect on the character and public confidence in judicial proceedings." *Schade v. Carnegie Body Co.,* 70 Ohio St.2d 207, 209 (1982). "In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson,* 79 Ohio St.3d 116, syllabus (1997).

**{¶54}** Dr. Thomas' testimony mirrors her written reports. In her written reports and during her testimony, Dr. Thomas discussed the tests she administered to both Mother and Father, the information she gathered from each, and her observations and conclusions. Parents were provided with a full and fair opportunity to cross-examine Dr. Thomas regarding her methods of evaluating parents, observations, and findings as well as her qualifications.

**{¶55}** Based upon the entire record in this matter, we find no plain error in the trial court's admission of Dr. Thomas' testimony. Even if the trial court's admission of the testimony was in error, such error was harmless as the magistrate's decision only references Dr. Thomas' written reports, not Dr. Thomas' testimony.

**{¶56}** Mother's third assignment of error is overruled.

MOTHER

V

**{¶57}** In her final assignment of error, Mother argues the trial court erred in conducting a hearing on RCCS's motion for permanent custody. Specifically, Mother claims the trial court had no authority to conduct a hearing on RCCS's motion for disposition because RCCS failed to expressly state the motion was brought under R.C. 2151.413. We disagree.

**{¶58}** An agency may obtain permanent custody of a child in two ways. *In re J.F.*, 2018-Ohio-96, 102 N.E.3d 1264, ¶ 44 (8th Dist.), citing *In re E.P.*, 12th Dist. Fayette Nos. CA2009-11-022 and CA2009-11-023, 2010-Ohio-2761, 2010 WL 2415606, ¶ 22. An agency may first obtain temporary custody of the child and then file a motion for permanent custody under R.C. 2151.413, or an agency may request permanent custody

as part of its abuse, neglect or dependency complaint under R.C. 2151.353(A)(4). *In re J.F.* at ¶ 44.

**{¶59}** "R.C. 2151.413 sets forth guidelines for determining when a public children-services agency or private child-placing agency must or may file a motion for permanent custody," and "R.C. 2151.414 sets forth the procedures a juvenile court must follow and the findings it must make before granting a motion filed pursuant to R.C. 2151.413." *In re C.W.*, 104 Ohio St.3d 163, 2004-Ohio-6411, 818 N.E.2d 1176, ¶ 8 and 9.

**{¶60}** R.C. 2151.413 governs the timing of the filing of a motion for permanent custody. RCCS filed its motion for disposition on January 8, 2021, after being awarded temporary custody of the Child in September, 2019, in accordance with R.C. 2151.413. There is nothing in the language of R.C. 2151.413 which requires the moving agency to specifically reference the statute in its motion. Assuming, arguendo, such a requirement exists, we find any error in the case sub judice was harmless. Had Mother objected to RCCS's failure to reference R.C. 2151.413 in its motion for disposition, the trial court could have, and most likely would have, allowed RCCS to amend its motion to include the statute. Accordingly, we find the trial court did not err in conducting a hearing on the motion.

**{¶61}** Alternatively, Mother asserts RCCS failed to comply with R.C. 2151.413(E).

**{¶62}** R.C. 2151.413(E) provides "[a]ny agency that files a motion for permanent custody under [R.C. 2151.413] shall include in the case plan of the child who is the subject of the motion, a specific plan of the agency's actions to seek an adoptive family for the

child and to prepare the child for adoption." While R.C. 2151.413(E) requires the agency which files a motion for permanent custody to include an adoption plan in the child's case plan, "the statute does not include a 'temporal requirement' to state '*when* such an adoption plan must be added to the existing case plan.' " *In re J.G.*, 9th Dist. Wayne No. 14CA0004, 2014-Ohio-2570, ¶ 8 (Emphasis sic.), quoting *In re T.R.*, 120 Ohio St.3d 136, 2008-Ohio-5219, ¶ 9-10. An adoption plan can be added to an existing case plan in accordance with the requirements of R.C. 2151.413(E) even after a motion for permanent custody has been granted. See, *In re T.R.* at ¶ 12.

{¶63} While Mother suggests RCCS was required to be submitted a case plan for adoption with its motion for permanency, we find no such requirement exists. RCCS could, and did, comply with its obligations under R.C. 2151.413(E) by submitting adoption plan subsequent to the permanent custody hearing.

{¶64} Mother's fifth assignment of error is overruled.


By: Hoffman, J.
Gwin, P.J.  and
Baldwin, J. concur